MUNGO J. CURRIE, PLAINTIFF IN ERROR, v. THE WAV-
ERLY AND NEW YORK BAY RAILROAD COMPANY,
DEFENDANT IN ERROR.

1. It is an established rule, in the condemnation of lands, that the just compensation which the landowner is entitled to receive for his land and damages thereto must be limited to the tract a portion of which is actually taken.
2. The mere plotting of land upon a map, without more, is not such a. division of it into separate tracts that the owner's damages must be limited to the particular block. a portion of which, as shown on the map, is actually taken.
3. The law gives as compensation to the owner of lands taken for a public use its fair price for any use for which it has a commercial value of its own in the immediate present or in reasonable anticipation in the near future.
4. The rule, that the special advantages of the land to the party acquiring it by condemnation shall not swell the compensation of the landowner, applies to cases where the taking, which is advantageous to the purchaser, is not pecuniarily disadvantageous to the seller. If, however, the advantageous feature is of such a nature that it has a commercial value in the hands of either, then a fair estimate of such value is a proper part of the just compensation which the owner is entitled to receive.
5. The situation and surroundings of land sought for railroad purposes. may impart to it a special value for such purposes generally; where such a value is shown, the owner may reap the benefit of it when compelled to part with his land by condemnation.

In error to the Hudson Circuit.

For the plaintiff in error, *Randolph, Condict & Black.*

This writ brings before this court alleged errors in law by the trial justice. *First,* in excluding legal evidence; sec-

*ond,* in admitting illegal evidence; *third,* error in law as stated in the charge as given; and, *fourth,* error in not charging as requested by the plaintiff at the trial, for all of which errors the plaintiff has been deprived of a legal right and "just compensation" for his land taken under article IV., section 7, ¶ 9.

I. First, as to the exclusion of legal evidence assigned as error in the first, second, third and fourth assignments of error.

There seems to be no question in law that the words "just compensation," as used in connection with proceedings of this nature in the constitution, has been judicially interpreted to mean, not only in this state, but in all the states, a compensation in money based upon those elements for which the land taken is best adapted, its best and highest use in view of its adaptability for those purposes which give the land its highest market value, that highest and best value is just compensation in contemplation of the constitution.

This has been aptly and tersely expressed by Chief Justice Witman, of the Supreme Court of Nevada:

"But the word 'just' is used, evidently, to intensify the meaning of the word 'compensation'—to convey the idea that the equivalent to be rendered for property taken shall be real, substantial, full, ample—and no legislation can diminish by one jot the rotund expression by the constitution. So are all the decided cases." *Virginia, &c., R. R. Co.* v. *Henry,* 8 *Nev.* 171, 172 (1873).

To the same effect is the language of Mr. Lewis, in his work on *Eminent Domain,* section 479:

"The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation." Citing with approval *Boom Co.* v. *Patterson,* 98 *U. S.* 403 (1878); *Lew. Em. Dom.,* § 479.

It that case the court applied the legal principle, that the use to which the condemning party sought to apply the land taken was a proper element for consideration in estimating the value of the lands condemned, that use being its best and highest use.

If, then, it be sound law, as enunciated by the authorities, that the landowner, in obtaining "just compensation," under the constitution is to have his land assessed at its best and highest value, what principle in logic or reason can be invoked for excluding the landowner from showing to the jury any of the uses for which the land is adapted, and especially its best use, even though that use is the use to which the condemning party seeks to apply the land taken? It would seem the mere statement of the proposition supported by the authorities would show its fallacy, and be a sufficient argument to demonstrate that the learned trial justice committed error in law in excluding the landowner in this case from showing the best use for which his land was adapted, viz., that of railroad construction and rights of way for railroad purposes. Yet the learned justice intimates that the reason for excluding the testimony offered, was because the use sought to be shown was the use to which the condemning party sought to apply the land taken, and such use being shown, would be taking advantage of the necessity of the party condemning, and that necessity would give the value to the land. Such reasoning is fallacious :

*First.* Because the landowner has done no act by which the necessity, if at all, is created.

*Second.* Because the use sought to be shown is not a use valuable exclusively to this particular condemning party for its particular use, but a use for that class of purposes to which it is sought to be applied—a distinction which would seem to be clear and well defined, and sustained by authority of the United States Supreme Court in the case of *Boom Co.* v. *Patterson,* 98 *U. S.* 403 (1878).

*Third.* Because if a necessity exists in fact, the condemning party creates that necessity, and the law, in commercial

contracts, gives and recognizes in the party all legal protection for his opportunities and advantages. Why, then, should he be compelled to yield these by the law to another for his or its gain and profit? Certainly not, at this age, on the ground of public necessity. To exclude such use being shown is, by judicial construction, to limit the constitution and to deprive the landowner of his full rights and protection under the guise of public necessity.

That our contention in this case under this point is sound in law, is so not only in reason and on principle, but is supported by authority in every case reported in the books that have been brought to our attention, and for such authorities supporting the general principle, that in condemnation proceedings a particular use of the land sought to be taken is a proper element for consideration in estimating the value of the lands condemned, see *Boom Co.* v. *Patterson*, 98 *U. S.* 403 (1878), where the use for which the party condemning sought to apply the land was permitted to be shown, that being the only use for which the land then had a high value as compared with its other uses.

Cases where its value for railroad purposes was shown—the use for which the land was to be applied by the condemning party : *Cohen* v. *St. Louis, &c., R. R. Co.*, 34 *Kan.* 158, 164 (1885) ; *Goodwin* v. *Cincinnati, &c., Co.*, 18 *Ohio St.* 181 (1868) ; *In re New York, Lackawanna, &c., R. R. Co.*, 27 *Hun* 116, 120 (1882) ; *Johnson* v. *Freeport, &c., Ry. Co.*, 111 *Ill.* 413, 419 (1884) ; *Lake Shore, &c., Ry. Co.* v. *Chicago, &c., R. R. Co.*, 100 *Id.* 21, 33 (1881).

That a pond has a special value for the purpose of supplying water to a village—the use to which it was sought to be applied by the condemning party : *Trustees of College Point* v. *Dennett*, 5 *N. Y. Sup. Ct.* 217, 5 *Thomp. & C.* 217 (1874) ; *Affirmed*, 2 *Hun* 669 (1874).

Its use for market gardening : *Chicago, &c., R. R. Co.* v. *Jacobs*, 110 *Ill.* 415 (1884).

Its value for the cultivation of cranberries : *Gardner* v. *Brookline*, 127 *Mass.* 363 (1879).

Its value for a water power and mill site: *Haslam* v. *Galena, &c., R. R. Co.,* 64 *Ill.* 353, 355 (1872).

Its value for a bridge site—the use sought to be applied by the condemning party: *Young* v. *Harrison,* 17 *Ga.* 30, 38 (1855).

Its use for dock purposes: *Calumet River Ry. Co.* v. *Moore,* 124 *Ill.* 329 (1888).

Its value for a saw mill, planing mill, &c.: *Dupuis* v. *Chicago, &c., Ry. Co.,* 115 *Ill.* 97 (1885).

Its value for city lots: *Washburn* v. *Milwaukee, &c., R. R. Co.,* 58 *Wis.* 364 (1884); *Queen* v. *Brown,* 2 *L. R., Q. B. Div.* 630; *Lew. Em. Dom.,* § 479, where the cases are collected.

The principle recognized in these cases above cited clearly leads to this. If property has a special value, from whatever cause, that special value belongs to the owner of the property, and he is entitled to be paid it by the party seeking condemnation, and that use, being the use to which the condemning party seeks to apply the land taken, cannot be excluded from consideration on that ground, either in reason or on authority.

To carry the reasoning under this point one step further by analogy and illustration, its fallacy would seem to be clear, and the position assumed by the learned trial judge untenable.

As, by way of illustration, if the state or a city had been given the right to condemn lands for the purpose of a state house site or a park, which has been done, could it be seriously contended, that the intrinsic value of such lands, sought to be taken for such purposes, would not be a proper element for consideration in determining their market value?

II. There was also error in law committed by the trial justice as assigned in the assignment of the fifth and sixth assignments of error, in admitting such evidence as was there admitted:

*First.* Because the evidence admitted was too remote to have any evidential value in law for the guidance of the jury. For authorities on this point, see *Lew. Em. Dom.,* § 443.

*Second.* Because the testimony admitted, as to what the Sisson plot was offered for, was illegal, as offers to sell are

not competent and legal evidence in New Jersey. *Mont-clair R. R. Co.* v. *Benson*, 7 *Vroom* 557.

And further, because it was not shown that the Sisson tract was similar to the property in question, and therefore illegal, as having no evidential value. See *Lew. Em. Dom.*, § 443.

III. There was also error in law committed by the learned trial judge in the charge as delivered to the jury, as assigned in the assignments of the eighth assignment of error, wherein the learned trial judge stated the rule of law to be, that damages should be limited to the block unless the owner was using that block and others in common for a single use, and also in not charging the jury as requested in the fourth request to charge by the landowner.

Because it would seem that, in reason and upon principle, damages, as forming part of just compensation, is a pure fact, and how far and to what extent that damage may extend is also a fact for the jury, and within the peculiar and especial province of the jury to determine as a fact, and to limit the consideration of that damage by artificial considerations or technical and artificial rules of law, is to not only deprive the landowner of a trial by jury on an issue of fact, but also to limit the constitution by judicial construction.

That the entire tract or holding of the landowner is to be considered as a unit and the damages are to be determined as a fact by the jury, has received the judicial sanction in a great many cases.

This is the law as we interpret it, and as declared in New Jersey in the case of *Somerville, &c., R. R. Co.* v. *Doughty*, 2 *Zab.* 495 (1850).

True, in that case this point was not expressly and pointedly ruled upon, but the court and the distinguished counsel employed in that case applied this rule of law to facts similar to those in the case at bar, apparently without question.

So, too, is the language of Chief Justice Dixon, speaking for the Supreme Court of Wisconsin, in a case where the facts were similar to those in the case at bar, when he says:

· " The division of the property into lots and blocks upon the map, and the appropriation of a portion of it for a street, were, so far as the plaintiff is concerned, and his use, and the injuries he has sustained, purely accidental circumstances. This did not obviate the use nor mitigate the injuries." *Welch* v. *Milwaukee,* &c., *Ry. Co.*, 27 *Wis.* 108, 112 (1870), affirmed and approved. *Doever* v. *Western Union R. R. Co.*, 32 *Id.* 585 (1873).

To same effect is *Cincinnati, &c., Ry. Co.* v. *Longworth,* 30 *Ohio St.* 108 (1876).

Mr. Justice Sheldon, of the Supreme Court of Illinois, enunciates the rule thus:

" It was not the damage to a strip of land lying within a limited number of feet of the road bed that the jury were required to assess, but the damages, if any, to the entire tract by reason of the construction and operation of the appellee's road. It is inadmissible to treat that portion of the property injured as a distinct and separate tract from that portion benefited." *Payne* v. *Chicago, &c., Ry. Co.*, 70 *Ill.* 324, 327 (1873); *Lew. Em. Dom.*, § 475, where the cases are collected.

Those cases which seem to enunciate a different rule on this point seem to have derived their authority from the case of *The New York Central, &c., R. R. Co.*, 6 *Hun* 149. That case and those in support of it are clearly distinguished from this case on the facts; there the fee was in the city, here in New Jersey it is still in the adjoining landowner.

There was also error committed in law by the learned trial justice in not charging the jury with the requests as set out in the second, third and seventh requests to charge by the landowner, and contained in the seventh assignment of error.

For the defendant in error, *Vredenburgh & Garretson.*

I. The fact that the rest of the land fronting on the shore opposite New York had been taken up mainly by railroad corporations, or is to be occupied by them, is not material.

This land at issue did not front on New York bay. If it were material, the question had just been asked and answered, and therefore there was no injury to the plaintiff.

II. The question overruled was incompetent. The attempt was to show how much cheaper the defendant could build a line of railroad from bay to bay, crossing partly plaintiff's land, than another line in some other place, and thereafter divide this saving in such a way as that to the value of the portion of plaintiff's land taken should be added its proportion of such saving. The saving in the construction of the line by the company condemning was not a material fact in determining the issue. *Selma, &c., R. R. Co.* v. *Keith,* 53 *Ga.* 178 ; *Pierce Railr. L.* (2d ed.) 213, and cases cited ; *Lew. Em. Dom.,* § 478, and cases cited.

III. The third error assigned was the refusal to allow the owner to prove the number of railroads projected over this Currie tract.

The question overruled is this :

" Have you any knowledge of the roads that are projected over this Currie tract in this natural depression ? "

The question was indefinite and uncertain. What kind of roads are intended ?,

What is meant by " projected ? "

By whom projected ?

What was meant by the Currie tract ? In the form asked, at least, it was incompetent. It did not call for the best evidence, viz., the filed survey of route and location.

At best its effect was so slight as to be within the discretion of the justice trying the cause. *Schenck.* v. *Griffin,* 9 *Vroom* 471.

IV. The fourth error assigned was in overruling a number of offers. They were offered and overruled in a body.

There is but one exception and one assignment of error for all of them. This exception and assignment of error are multifarious. *Associates* v. *Davison,* 5 *Dutcher* 416 ; *Oliver* v. *Phelps, Spen.* 181.

In addition, if any of the offers was incompetent or immaterial, the action of the judge in overruling them as a body was correct. *Thomp. Tr.* 551, 678; *Smith* v. *Bank*, 104 *Pa. St.* 518; *Harger* v. *Edmunds*, 4 *Barb.* 256; *Cow. & Hill's notes* 790.

It was the duty of the counsel making offers to present them separately and obtain the ruling of the court on each, unless all the offers were competent.

Can there be any question that this offer is immaterial and incompetent?

"Also, that the rapid increase in the number of railroads needing terminal lands in Hudson county on the Hudson river and New York, and the great increase in the business of these roads, already possessing such lands, makes it probable that in the near future the whole of the Currie tract will be needed for right of way for railroads."

These offers were also not competent, because their object was to swell the damages beyond the actual fair value of the land at the time by consideration of the probability that in the future legislative authority might be acquired to build railroads across the property. *Moulton* v. *Newburyport Water Co.*, 137 *Mass.* 163; *San Diego* v. *Neale (Cal.)*, 3 *L. R. A.* 83; *Boston, &c., R. R.* v. *Troy, &c.*, 22 *Hun* 176; *Black R.* v. *Barnard*, 9 *Id.* 104.

How much the land may be worth to the public for the purpose for which it is condemned has nothing to do with the question of owner's damages. *Mills Em. Dom.* 173; *Sullivan* v. *Lafayette Co.*, 61 *Miss.* 271.

The object, also, was to prove by the witness a present active demand for right of way for railroads across the Currie tract by reason of its superior advantages.

This was immaterial, because the question was its value at the time of the location of this railroad, not the present value.

There could be no active demand for rights of way by railroads unless they had filed their routes as required by law, and then only the company that had filed its route over this right of way could acquire it at any price.

V. The sixth error assigned is admission of evidence of the price for which adjacent property was offered.

The counsel, when objecting, stated no reason for his objection to the court.

The question is asked. The record states: "Question objected to."

Chief Justice Hornblower, in *Oliver* v. *Phelps, Spen.* 181, says: "Surely it will not be pretended that it is sufficient for a party to say, 'I object,' and then, if the judge overrules the objection, to take a bill of exceptions and thereupon to assign and maintain error for reasons which, if they had been presented to the judge, might have changed his opinion. Such a doctrine would imply omniscience in a judge."

Approved by Chief Justice Whelpley, in *Associates* v. *Davison,* 5 *Dutcher* 416.

The record apparently discloses that the judge thought the objection was directed toward the time of the offer.

VI. There is not on the record any refusal to charge. *Petier* v. *State,* 6 *Vroom* 64. The judge had charged on the points requested.

VII. The judge stated accurately the law on the subject, and the leaving the subject to the jury, and the manner of leaving it to the jury, was as favorable to the landowner as he could ask.

Where a block is divided by a street the parts become distinct tracts as to each other, where they are merely held for sale or use as building lots. *Mills Em. Dom.,* § 167; *Lew. Em. Dom.,* § 475; *Pittsburg, &c.,* v. *Rich,* 101 *Ill.* 159; *Todd* v. *Kankakee,* 78 *Id.* 530; *Flemming* v. *Chicago R. R.,* 34 *Iowa* 353; *New York Central R. R. Co.,* 6 *Hun* 149; *Wilson* v. *St. Paul R. R.,* 35 *Minn.* 441.

The court will not reverse judgment if substantial justice was done. Award was $11,090; judgment, $13,125.

The proof makes it evident that landowner received the most liberal compensation for his lands and damages.

The opinion of the court was delivered by

GARRISON, J. This writ of error brings up the Circuit record of an issue tried upon an appeal from the award of commissioners appointed to condemn the lands of Mungo J. Currie, upon the application of The Waverly and New York Bay Railroad Company. The landowner is the plaintiff in error. The land taken for railroad purposes is a strip one hundred feet in width and seven hundred and seventy feet in length, lying near, but not fronting upon, New York bay. The strip in question is part of a tract of several acres belonging to the same owner. This tract had been plotted by its owner into town lots, and delineated upon a map showing streets and avenues. In 1885 lots were offered at public sale by this map, but no lots abutting upon the avenues adjacent to the strip in question have been sold. The route selected by the railroad runs parallel with, and in immediate adjacency to, an avenue marked upon this map as Fifty-second street. The block upon which the route is located is bounded upon this map by Fifty-second street upon one side, and by Fifty-third street upon the other, and is the only block any portion of which is actually taken by the railroad. In this situation of affairs the jury were instructed by the trial court that the damages to be awarded to the landowner must be limited to the particular block a portion of which, as shown upon the map, was actually taken, unless it appeared from the evidence that the owner was using that block in common with the rest of his lands for a single use. In explaining this instruction to the jury the court used two illustrations. The jury was told that if the owner had a factory that covered three or four of these blocks and was using that factory as an entirety, then the block taken would not be the limit for assessing damages. The other illustration was that of a farmer who, having mapped his farm into blocks, continued to cultivate it as a unit.

The propriety of the rule of damages thus laid down is the subject of a specific exception to the judge's charge.

It is an established rule of law in proceedings for condemnation of land, that the just compensation which the landowner is entitled to receive for his lands and damages thereto must be limited to the tract a portion of which is actually taken. The propriety of this rule is quite apparent. It is solely by virtue of his ownership of the tract invaded that the owner is entitled to incidental damages. His ownership of other lands is without legal significance. Within the tract thus owned his rights are two-fold—*first*, he is to be paid the value of the land included in the petition of the condemning agent, and *secondly*, he is entitled to an award of such damages as result to the residue of his tract. In the application of this rule no practical difficulty can arise where the tract is bounded by the lands of others. The difficulty, in so far as it has arisen hitherto, is in those cases in which the owner of several blocks of land, separated from each other by public highways, has claimed compensation for land taken in one block, and also incidental damages to his adjacent parcels. The question thus presented is said to have been decided adversely to the claim of the landowner in the case of *Matter of New York Central R. R. Co.*, 6 *Hun* 149. That case decides, that in the city of New York blocks of building lots are separate tracts, and that no tract can be regarded as incidentally injured save only the particular one out of which the land required by the railroad company is in fact taken. The value of this case as an authority upon the point under consideration is, however, greatly impaired, if not altogether destroyed, by the fact that by virtue of an act of the legislature of New York, passed in 1813, the fee to the streets and other public lands in the city of New York is vested in the municipality. *Kellinger* v. *The R. R. Co.*, 50 *N. Y.* 206. For obvious reasons this case furnishes no controlling principle applicable to those jurisdictions in which an owner may assert absolute continuity of title to abutting lands lying upon opposite sides of a public highway. *Jonas* v. *Salter*, 10 *Vroom* 469; *Ayres* v. *Pennsylvania R. R. Co.*, 21 *Id.* 660; *Ayres* v. *Pennsylvania R. R. Co.*, *post*, *p.* 405. Indeed, a contrary

view obtained recognition in the Supreme Court of this state in the case of *The Somerville and Easton R. R. Co. v. Doughty,* *2 Zab.* 495. The present case, however, does not call for a decision upon this point. The question now before us is not, what would be the rule of damages where the owner's tract is actually subdivided by public highways, but whether the delineation of proposed subdivisions upon a map shall have the effect of limiting incidental damages to a particular block shown upon such map. The question thus presented is quite apart from the rights which a vendee, purchasing by such map, acquires against his vendor. As the case comes before us, there is nothing actually upon the ground, nor is there anything constructively in the conduct of the owner to break the previous unity of his title over his entire tract. The fee in the lands marked "streets" upon the map, which would have remained in him even if an easement had actually attached, is as yet in him, unsubjected to any burden which an invading corporation can set up as the legal limit of the territory over which the rule of resulting damages may extend. If damages are to be confined to a small parallelogram of land out of a tract of many acres similarly, although not equally, injured, it must be either because the land thus selected is in fact a separate tract, or because, by virtue of some rule of law, it must be so regarded. In the present case neither of these conditions exist. The instruction, therefore, that the owner's damages must be limited to a particular block delineated upon his map, unless he could, by evidence, show an actual and *contra* user, was giving to the mere act of plotting of the land upon paper an effect in excess of its legal import. The presumption of law thus assumed threw upon the owner of the lands a burden of proof which must be regarded as injurious to his property rights. For the correction of this error there must be a new trial.

A further question is presented upon this record. Upon the trial of the appeal a line of proof was offered by the landowner which was overruled, and a bill of exceptions allowed. The offer was to prove, in respect to the lands taken, a num-

ber of matters tending to show that it possessed a special value
for railroad purposes generally, irrespective of its individual
advantages to the defendant in error.    Some of the matters
thus offered were purely speculative opinions, while others were
conclusions from undisclosed facts.    Such offers were properly
overruled.    There were, however, offers which we think were
improperly rejected.    Among other things, the landowner
offered proof upon the following points : *First,* that more than
two-thirds of the land in Hudson county lying upon the New
York bay was occupied as railroad termini ; *second,* the situa-
tion of the land in question in relation to this water front ;
*third,* the width of the territory thus available ; *fourth,* the
relation of the land in question to that portion of New
York bay as yet unappropriated for railroad purposes.    These
offers were overruled, not because they were unsusceptible of
proof, but because they were regarded as not proper subjects
for the consideration of the jury in estimating the amount of
their award.    The propriety of this ruling is before us upon
this record.    In substance, the landowner offered to show to
the jury the situation and surroundings of the land in ques-
tion, with reference to its special availability as a railroad
approach to an established centre of commerce.    His conten-
tion was, that if this availability could be shown, it gave to
his lands a pecuniary value for this purpose for which, as
their owner, he was entitled to be paid.    In the aspect in
which the case comes before us, we must assume that such an
availability existed, and that it could have been shown.    The
rule is imperative, that where an offer is made and rejected
those things must be considered as true which the plaintiff in
error offered to prove and was not permitted to prove.    *Peak*
v. *State,* 21 *Vroom* 179, 219 ; *Peacock* v. *State,* 21 *Id.*
653, 655 ; *Scotland County* v. *Hill,* 112 *U. S.* 183, 186.    The
questions raised by this ruling are : (1) May the situation and
surroundings of land sought for railroad purposes impart to it
a special value for such purposes generally ?    (2) If such
special value is shown may the owner reap the benefit of it
when called upon to part with his land by the compulsory

process of condemnation ?   That land near a centre of trade
increases in value with the growth of commerce and in the
line of its requirements, is not more self-evident than that as
the locations for railroad access to such a centre are taken up
and occupied, the residue of the lands available for such pur-
poses increases in special value in proportion to the demand
thus created and to the scarcity thus produced.   From the
same elements of common knowledge it results that the value
arising from this situation of affairs is an existing value, inher-
ent in the residue of such lands at whatever time any portion
of such residue is sought by a new claimant for railroad facil-
ities.   It would be contrary to economic law and repellant to
common justice to permit the fact that the lands are selected
by a public agent because of this availability to strip them of
any element of value which, independently of the new-comer
and prior to his advent, they possessed.   The fact that the
special value acquired by lands thus situated has arisen from
their availability for purposes similar to those to which the
condemning party proposes to put them, is without signifi-
cance.   Such an availability is not special to this one carrier;
it is general to all who are engaged, and to all who may be
engaged, in similar enterprises, whose existence and whose
presence as a class at or near these lands became an admitted
fact by the rejection of testimony competent to prove it.
Whether this circumstance does or does not impart an appre-
ciable money value to any given piece of land is a pure ques-
tion of fact, and must be treated as such.   Our present concern
is to discover by what rule of law applicable to investigations.
of this character the jury are excluded from passing upon this
element of value, if, in fact, it exists.   The rule of law appli-
cable to the condemnation of land to these *quasi* public uses
is, that its owner shall be given, by way of compensation for
his land, its fair price for any use for which it has a commer-
cial value of its own in the immediate present or in reason-
able anticipation in the near future.   It is for the owner's
deprivation of any existing value that he is to be compensated.
Neither the individual advantages to the party acquiring the

land, nor the necessity of its acquisition, can be considered in computing the loss of the land to the owner; but there is nothing in this principle which I have stated as favorable to the public agent, as the law admits, which will enable a condemning party to take, without payment, land values not created by it nor based upon its advantage or necessity, but which, on the contrary, antedated its advent, and owe their existence to natural situation and growth of trade, and the general economic laws underlying all commercial values. The rule, that the special advantage of the land to the acquiring corporation shall not add to the compensation to be paid the landowner applies to cases where the taking, which is advantageous to the purchaser, is not pecuniarily disadvantageous to the seller. If, however, the advantageous feature is of such a nature that it is of commercial value in the hands of either, then one cannot take it from the other without paying for it.

These views are in entire harmony with the principle laid down by the Supreme Federal Court in *Boom Company* v. *Patterson*, 98 *U. S.* 403, where it was held that the situation of certain islands, with reference to their special adaptability to booming purposes, might be shown as a circumstance which the owner had a right to insist upon as an element in estimating the value of his lands. Similar views have been expressed in many of the state courts. *Trustees of College Point* v. *Dennett*, 5 *Thomp. & C.* 217, 2 *Hun* 669; *Chicago R. R. Co.* v. *Jacobs*, 110 *Ill.* 415; *Gardner* v. *Brookline*, 127 *Mass.* 358, 363; *Haslam* v. *Galena R. R. Co.*, 64 *Ill.* 353; *Young* v. *Harrison*, 17 *Ga.* 30; *Calumet River Ry. Co.* v. *Moore*, 124 *Ill.* 329.

In re *New York, Lackawanna, &c., R. R. Co.*, 27 *Hun* 116, the court goes to a much greater length in applying this principle than is necessary for its support in cases like that before us. In that case the owner of an abandoned canal bed successfully maintained an award based upon its special adaptability to railroad purposes. I do not feel called upon to express any opinion as to the propriety of the application made of the law to the facts of that case. The correct princi-

ple was, however, recognized by the court, and for that alone the case is now cited with approval.

To the same end may be cited *Goodwin* v. *Cincinnati, &c., Co.*, 18 *Ohio* 181; *Cohen* v. *St. Louis, &c., R. R. Co.*, 34 *Kan.* 158, 164; *Johnson* v. *Freeport, &c., Ry. Co.*, 111 *Ill.* 413, 419; *Lake Shore and Western Ry. Co.* v. *Chicago, &c., R. R. Co.* 100 *Id.* 21, 33.

Under the law as thus expounded the landowner in the present case should have been permitted to produce evidence as to the situation and surroundings of his land as they existed at the time of the location of the company's route, for the purpose of demonstrating, if he was able, that there resulted to his land from these circumstances a special value growing naturally out of the best use to which, from its situation, it was presently adapted. Guarded by the exclusion of speculative opinions upon the one hand, and of the individual advantages to the condemning agent upon the other, such a course will best secure to the owner of the lands taken that compensation for their general value which is guaranteed by the constitution whenever private property is taken for a public use.

A further ground of exception was the admission of testimony as to the price at which a witness, who was a stranger to this record, had offered to sell to another stranger a piece of land belonging to yet a third stranger, but adjoining the tract in question. The proof was clearly incompetent. *Montclair R. R. Co.* v. *Benson*, 7 *Vroom* 557. The attention of the court was not, however, directed to any special ground of objection, and it is evident that the objection was deemed to be addressed to the period of time at which the transaction in question occurred. Had the reason which is now urged been presented at the time, the question would, in all probability, have been overruled. A general objection to the admission of testimony is unavailing upon error. *Oliver* v. *Phelps, Spen.* 181.

The record will be remitted, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Depue, Garrison, Magie, Van Syckel, Brown, Clement, Cole, Smith, Whitaker.    11.*

---

* Justices Depue and Van Syckel voted to reverse only on the first ground stated in the opinion.