*45 Vroom.*                    In re Security Land Co.

IN THE MATTER OF THE ACQUISITION OF LAND OF THE
SECURITY LAND AND IMPROVEMENT COMPANY AND
BENJAMIN MEYER, OF NEWARK, NEW JERSEY, WHO
CLAIMS TO HAVE AN INTEREST IN SAID LAND, BY
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

Argued November 8, 1906—Decided February 25, 1907.

Upon the trial of an appeal from an award of appraisers in a pro-
ceeding to condemn land taken by a railroad company, it was
error to admit an unproved map showing a route filed by another
railroad, and if the map had been proved, it was error to admit
testimony that the center line of this route passed over the prop-
erty in question.

This writ of error brings up a judgment of the Union
County Circuit Court entered upon a verdict rendered at the
trial of an issue framed to try an appeal from an award of
commissioners appointed in a proceeding to condemn the
land of the Security Land and Improvement Company and
Benjamin Meyer. The appeal is taken by the Central Rail-
road Company, which company instituted the proceedings for
condemnation. The verdict fixed the value of the land taken
at the sum of $11,000.

Before Justices FORT, PITNEY and REED.

For the plaintiffs, *Lindabury, Depue & Faulks.*

For the Security Land and Improvement Company, de-
fendant, *Patrick H. Gilhooly.*

For Benjamin Meyer, defendant, *Hood & Hood.*

The opinion of the court was delivered by

REED, J.   The first assignment of error is directed to the
admission in evidence at the trial, over objection, of a map,
upon which was represented a filed center line of another

proposed railroad. After the map was tendered in evidence, and the witness had said that the map was intended to represent the filed center line of the Pennsylvania railroad fast line, which they expect to put through the city, the court, against objections, permitted this question, namely, "Now, does that center line pass through this property?" The answer was, "It does."

The purpose of this offered map, as stated at the trial, was to show what the property was adapted for in the market and what demand there was for it, and whether it was property that people want or do not want.

An exception was sealed to the admission of this map and to this testimony.

Subsequently a certified copy of the description of the route of this Pennsylvania and Newark railroad—the road already mentioned—was tendered and then withdrawn. Throughout the trial, therefore, a copy of the map showing the center line of this proposed new road, and the testimony that this center line ran through the property in question, was left in evidence. This map was entirely unproved, and it was, upon that account, inadmissible. Its presence was calculated to create an impression upon the minds of the jury that another road was seeking a way over the *locus in quo,* and therefore that the land was of exceptional value for a railroad route.

But had the map been properly proved as a filed right of way of the Pennsylvania and Newark Railroad Company, no ground for its admission is perceptible.

No doubt the landowner can show the peculiar availability of his tract for any use, including that for railroad purposes. He can show a contracted space suitable for such purposes; how much of such has been already occupied; what the demand for the remaining space, including his own tract, will be for such use. He can show all this to exhibit the increase in commercial value of his property. *Currie v. Waverly, &c., Railroad Co.,* 23 *Vroom* 381, 395.

It would not, however, be thought for an instant that a previous offer, made to an owner by one who states that he wished the property for manufacturing or other purposes, is

admissible.  Much less would a mere statement by a person that the property was desirable for such purposes, or that he was trying to purchase it for such purposes.

Nor would a similar statement, in behalf of a corporation equipped with power to take the property by condemnation, be admissible.

Now, the filing of a right of way over land is not even an assertion that the corporation thinks so highly of the land for a railroad site that it will endeavor to condemn it.  Such a filing is only tentative.  The road may never be built, or, if built, be constructed upon some other route.  Even if the filing of the route was a finality, and compelled the condemnation of the land for the construction of the road upon the filed route unless prevented by some superior claim, nevertheless the fact of filing would be entirely irrelevant upon the question of the value of the land in a proceeding by another corporation to condemn it.

In the present proceeding to condemn, the significance of the fact that another company had got a right to condemn would mean only that the owner should have the value of his land, but would have no force whatever in indicating what that value was.

In the present trial upon the condemnatory proceedings brought by the Central Railroad Company, the question being the value of the land, it is therefore imperceptible what effect upon the question of damages the fact that another company had sought to condemn possesses.  If the other company made an offer for the land, the inference is that they should pay the ascertained value, the very question to be answered in the present trial.  If the other company made an offer, it would be inadmissible, as would an offer of any other third party. As a statement of availability for railroad purposes, as already remarked, the filing would be equally inadmissible.

For these reasons we are of the opinion that there was error in admitting the map and the testimony of the witness that the center line marked upon it ran through the *locus in quo.*  For this reason the judgment should be reversed.

We find no error in the other exceptions.