HACKENSACK WATER COMPANY, PETITIONER, v. TOWN-
SHIP OF NORTH BERGEN, RESPONDENT.

Decided October 22, 1940.

For the petitioner, *Milton, McNulty & Augelli* (by *John Milton* and *Joseph Keane*).

For the respondent, *Nicholas S. Schloeder.*

QUINN, President. Petitioner operates a large water distribution system in the northeastern area of the state, its reservoirs and pipelines being spread throughout many municipalities. These appeals involve the determination of

the true value of the personal property of the company situate in the respondent taxing district on October 1st, 1937, and October 1st, 1938.

The assessment for each of the tax years in question was made by the taxing authorities at $1,500,000. Appeals for a reduction thereof was dismissed by the Hudson County Board of Taxation.

Before proceeding to a detailed consideration of the proofs, we refer briefly to the principles which must control us in appraising them. The assessments enjoy the presumption of correctness, not in any substantive sense, but merely in the aspect of making it incumbent upon the taxpayer to adduce proofs of value, which in turn must be met by countervailing proofs by the city sufficient to outweigh those of the petitioner, if the assessment is to be sustained. *New Jersey Bell Telephone Co.* v. *City of Camden* (*Supreme Court*, 1939), 122 *N. J. L.* 270; 4 *Atl. Rep.* (*2d*) 705.

The proofs before us must be appraised, furthermore, with respect to their evidentiary value upon the issue as to the true value of the property in question, in the statutory sense, *i. e.*, upon the criterion as to the price in money which a willing seller could obtain for the property from a willing buyer at a fair sale as of the assessing date, under private contract. *Turnley* v. *Elizabeth* (*Supreme Court*, 1908), 76 *N. J. L.* 42; 68 *Atl. Rep.* 1094; *Universal Insurance Co.* v. *State Board of Tax Appeals* (*Supreme Court*, 1937), 118 *N. J. L.* 538; 193 *Atl. Rep.* 915. And this standard has been held applicable to the valuation of tangible personalty in use for utility purposes, as herein. *New Jersey Bell Telephone Co.* v. *Newark* (*Supreme Court*, 1937), 118 *N. J. L.* 490; 193 *Atl. Rep.* 844; *affirmed* (*Supreme Court*, 1940), 124 *N. J. L.* 451; 12 *Atl. Rep.* (*2d*) 675; *New Jersey Bell Telephone Co.* v. *Camden, supra.*

In the present case, the usually applicable presumption of correctness of the assessment, in the limited sense noted above, is dissipated because of the rise in the assessment of the property from a valuation of $1,050,000 in the years preceding the tax years now under appeal, to the figure of $1,500,000 under attack in these proceedings, unexplained by anything

in respondent's proof. *Skouras Theatres Corp.* v. *State Board of Tax Appeals* (*Supreme Court,* 1939), 123 *N. J. L.* 52; 8 *Atl. Rep.* (*2d*) 72; *New Jersey Bell Telephone Co.* v. *Camden, supra* (at *pp.* 272, 274). There is positive proof herein, adduced by petitioner and unrebutted by the taxing district, that there was no substantial change in the value of the property for the years 1938 and 1939, from that of the years immediately preceding.

Petitioner offered specific expert testimony as to the true value of its tangible personalty through Mr. Emile J. Fricker, assistant to the president of the company, whose testimony as to the reproduction cost of the property is fortified by thirty-two years of association with the company, and the attendant experience with the actual building, replacement and repair of a substantial part of petitioner's system. Moreover, this witness was qualified at the hearing as particularly expert in the waterworks industry by reason of his activity in the national trade association devoted to the business, his close study of the literature in the field, and an active association for many years with valuation engineers and operators specializing in waterworks utilities. He valued the property under appeal, as of the assessing dates for each of the years here involved, at $940,000, representing his opinion as to what a willing buyer and seller would agree upon, after considering reproduction cost, book cost, the condition of the property upon the assessing date, the fact that the property was a part of a going concern, and the particular use to which it was being devoted. In the absence of evidence of sales of similar property, considerations such as those to which the witness referred are competent and essential to a sound determination of true value.

Upon cross-examination, the witness furnished detailed estimates for the replacement of the various species of property in question, consisting of pipe of various sizes, meters, service connections, hydrants, valves, and other property, based upon depreciated cost new, and allowing for trenching and engineering expense. The witness did not, however, value pumps in the pumping station of the company, conceiving them as realty, not personalty. The assessor has testified

that these pumps were assessed as personalty, not realty, and valued them at $48,732. In the absence of any proof as to the precise nature of the pumps, or of their location, degree of affixation, or adaptation to the structure in which situated, we must accept the presumption that the assessor correctly assessed them as personalty.

In contrast to the outstanding qualifications of petitioner's valuation expert, the witness through whose testimony the respondent attempted to meet the force of the former's testimony, was the township assessor, who, while technically competent to testify as such, possesses none of the special qualifications requisite to trustworthy appraisal in this specialized field of utility valuation. He has been an assessor for eight years, but has never had any experience as an engineer, builder or contractor, or in the sale or purchase of property of the character under appeal. He testified from sheets of paper containing calculations ready made, with which he did not appear very familiar, and stated that his estimates of costs and depreciation of petitioner's properties were based upon pamphlets, text books, and adjudicated cases, none of which, however, were particularized. His conclusion was that the sound value of the property was $1,451,268. While a witness can qualify as a valuation expert through study as well as experience, nothing has been produced in this case to warrant the fair conclusion that this witness is an expert, of any character, in respect of waterworks property. His testimony carried little or no probative weight.

The only other proof adduced by the taxing district was that of the township engineer, in an attempt to rebut Mr. Fricker's estimate of excavation costs for new piping at $1 for earth and $6 for rock excavation. He testified that in his experience such costs ran approximately twice the amounts given by Mr. Fricker. The experience of this witness, however, was limited to excavations between 1925 and 1930, at the peak of costs, while that of petitioner's witness related to actual and current experience with the very property under appeal.

Our conclusions in this case have been fortified by the consideration that none of the witnesses in the case conceived

that a valuation including all of the expenditures (*i. e.,* excavation, repaving, engineering) necessary to enable a water company to operate, and considered as elements of reproduction cost by one or another of them, must, to some extent, be deemed to measure the value of the franchise to occupy the public streets, roads, and places in the respondent taxing district, without which the entire plant would be of no value but salvage. But the franchise of petitioner is specifically excluded from taxation in any manner other than under the act for the taxation of the gross receipts of public utilities occupying public streets and highways, in lieu of any and all taxes upon the franchises of such corporations. *Pamph. L.* 1900, *ch.* 195, § 1, as amended by *Pamph. L.* 1938, *ch.* 7, § 1. Since reproduction cost is, in any event, admissible only as some evidence of market or true value, the addition to the cost of the tangible property of a water company, of expenses of installation, excavation, and engineering, requisite to enable it to operate as an *enfranchised* enterprise, would seem partly to measure the value of such franchise.

To such extent, difficult though it may be to calculate in the absence of proof not here adduced, a discount must be made from total enterprise replacement cost, in order to avoid the direct taxation of the franchise prohibited by the act cited above. In *Long Dock Co.* v. *State Board of Assessors (Supreme Court,* 1909), 78 *N. J. L.* 44 (at *p.* 53); 73 *Atl. Rep.* 53, the court said, anent a problem directly analogous:

"The difference, however, between the market value of land by reason of its availability for railroad purposes generally, and the value imparted to such land by its specific use under a railroad franchise, is so great as to be fundamental. The latter value is special and peculiar to the individual user of the land proceeding as it were from within, whereas the former is general and is based upon external conditions susceptible of universal application as a legal measure. A single foot of submarine cable, owing to its peculiar use under the franchise of its operating company, has thereby imparted to it a value many thousand times greater than such foot of cable possesses when estimated at its market value. The same

is true of the tracks of a railroad company and is also true of its terminal lands. Our General Tax act (*Pamph. L.* 1903, *p.* 398) practically defines the market value of land as 'the price it would sell for at a fair and *bona fide* sale by private contract.' In the valuation of the terminal lands of the prosecutors it was the duty of the State Board under the act of 1888 to appraise them at their market value from the testimony."

On the other hand, that value which the property under appeal possesses as an increment due to its assembly and availability for special use, aside from the owner's possession of a franchise for such use, must be taken into consideration, in the determination of its true value. *Long Dock Co.* v. *State Board of Assessors (Supreme Court,* 1916), 89 *N. J. L.* 108, 111; 97 *Atl. Rep.* 900.

After a careful consideration of all the proof, subject to the foregoing observations, we conclude that the true value of the property in question did not exceed, for either the year 1938 or 1939, the amount of the assessment for the property made by the respondent taxing district for the year 1937, or $1,050,000.

The judgment of the Hudson County Board of Taxation will therefore be reversed and the assessments ordered reduced to the said sum of $1,050,000 for each of the years under appeal.